**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

CARLOS PEREZ PEREZ
c/o 519 H Street NW
Washington, DC 20001

LIDIA RAMOS
c/o 519 H Street NW
Washington, DC 20001

       Plaintiffs,


v.

CHAROEN, INC.
d/b/a ABSOLUTE THAI RESTAURANT
521 G Street NW
Washington, DC 20001

CHAROEN DC, INC.
d/b/a ABSOLUTE NOODLE
772 5th Street NW
Washington, DC 20001

CHAROEN VA, INC.
d/b/a ABSOLUTE THAI RESTAURANT &
PATISSERIE
1381 Beverly Road
McLean, VA 22101

YODCHAI HORCHAROEN
a/k/a WODCHAI HORCHAROEN
6409 Hawk View Lane
Alexandria, VA 22312

       Defendants.

**COMPLAINT**

**Case No.** _____

## COMPLAINT

### Introduction

1.      Defendants own and operate Thai restaurants in Washington, DC and Virginia. Defendants employed Plaintiffs as kitchen hands. Defendants typically paid Plaintiffs flat salaries that resulted in sub-minimum wages and a denial of overtime wages.

2.      Plaintiffs bring this action to recover damages for Defendants' willful failure to pay minimum and overtime wages, in violation of: the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

### Jurisdiction and Venue

3.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because some of the Defendants reside in this district, and because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this district.

### Parties

5.      Plaintiffs are adult residents of Washington, DC.

6.      Defendant Charoen Inc. is a District of Columbia corporation. It does business as "Absolute Thai Restaurant." Its principal place of business is 521 G Street NW, Washington, DC 20001. Its resident agent is Defendant Yodchai Horcharoen, 521 G Street NW, Washington, DC 20001.

7.      Defendant Charoen DC, Inc. is a District of Columbia corporation. It does business as "Absolute Noodle." Its principal place of business is 772 5th Street NW, Washington, DC 20001. No resident agent is recorded in the online directory of the District of Columbia's Department of Consumer and Regulatory Affairs.

8.      Defendant Charoen VA, Inc. is a Virginia corporation. It does business as Absolute Thai Restaurant & Patisserie. Its principal place of business is 1381 Beverly Road, McLean, VA 22101. Its resident agent is Michael W. Kim, 4600 H Pinecrest Office Park Drive, Alexandria, VA 22312.

9.      Defendant Yodchai Horcharoen is an adult resident of Virginia. He resides at 6409 Hawk View Lane, Alexandria, VA 22312. On information and belief, Defendant Yodchai Horcharoen has also been known as Wodchai Horcharoen.

<u>GENERAL FACTUAL ALLEGATIONS</u>

**FACTS SPECIFIC TO DEFENDANT YODCHAI HORCHAROEN**

10.     At all relevant times, Mr. Horcharoen was the primary owner and managing officer of the three corporate Defendants.

11.     At all relevant times, Mr. Horcharoen had the power to hire, fire, suspend, and otherwise discipline Plaintiffs.

12.     At all relevant times, Mr. Horcharoen supervised, either personally or through agents, Plaintiffs' work duties to ensure Plaintiffs' work was of sufficient quality.

13.     At all relevant times, Mr. Horcharoen set Plaintiffs' work schedules.

14.     At all relevant times, Mr. Horcharoen set and determined Plaintiffs' rate and method of pay.

15.     On information and belief, Mr. Horcharoen maintained the employment records of the three corporate Defendants.

16.     At all relevant times, Mr. Horcharoen controlled and was in charge of the day-to-day operations of the three corporate Defendants.

## FACTS CONCERNING DEFENDANTS' INTEGRATED ENTERPRISE

17.     Defendants own and operate "Absolute Thai," located at 521 G Street NW, Washington, DC 20001.

18.     Defendants own and operate "Absolute Noodle," located at 772 5th Street NW, Washington, DC 20001.

19.     Defendants own and operate "Absolute Thai Restaurant & Patisserie," located at 1381 Beverly Road, McLean, VA 22101.

20.     Mr. Horcharoen exercises exclusive control over the three corporate Defendants.

21.     Mr. Horcharoen operates the three corporate Defendants as though they were one integrated enterprise.

22.     Mr. Horcharoen worked at and supervised the operations of Absolute Thai, Absolute Noodle and Absolute Thai Restaurant & Patisserie.

23.     On information and belief, the three corporate Defendants share material and financial resources under the direction of Mr. Horcharoen.

24.     Defendants regularly reassign employees from one restaurant to another.

25.     While Plaintiff Carlos Perez Perez worked at Absolute Thai Restaurant & Patisserie, Defendants occasionally made him work at Absolute Thai.

26.     Defendants reassigned both Plaintiffs from Absolute Thai Restaurant & Patisserie to Absolute Noodle.

4

**FACTS SPECIFIC TO PLAINTIFF PEREZ**

27.     Defendants employed Plaintiff Carlos Perez Perez ("Perez") in Defendants' restaurants from approximately March 1, 2012 through approximately November 1, 2015.

28.     Plaintiff Perez was employed in Defendants' restaurants as a kitchen hand. His duties included cooking and preparing vegetables and meats.

29.     Plaintiff Perez worked at all three of Defendants' restaurants.

30.     From March 1, 2012 through approximately August 31, 2015, Plaintiff Perez's usual workplace assignment was Absolute Thai Restaurant & Patisserie.

31.     From March 1, 2012 through approximately August 31, 2015, Defendants occasionally assigned Plaintiff Perez to work at Absolute Thai.

32.     On approximately September 1, 2015, Defendants reassigned Plaintiff Perez to work at Absolute Noodle.

33.     Plaintiff Perez worked at Absolute Noodle from approximately September 1, 2015 through approximately November 1, 2015.

34.     Plaintiff Perez typically worked six days a week at Absolute Thai Restaurant & Patisserie and Absolute Noodle.

35.     Plaintiff Perez's typical work schedule at both Absolute Thai Restaurant & Patisserie and Absolute Noodle was approximately as follows:

| Monday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11.0 Hours |
|---|---|---|---|
| Tuesday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11.0 Hours |
| Wednesday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11.0 Hours |
| Thursday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11.0 Hours |
| Friday | 10:30 a.m. – 11:00 p.m. | 1 hour break | 11.5 Hours |
| Saturday | 11:00 a.m. – 11:00 p.m. | 1 hour break | 11.0 Hours |

5

| Sunday | Off | Off | Off |
|--------|-----|-----|-----|
|        |     |     | **66.5 hours** |

36.    On occasion, Plaintiff Perez worked on Sundays at Absolute Thai Restaurant & Patisserie and at Absolute Noodle. Plaintiff Perez worked on Sunday, from 10:00 a.m. – 10:00 p.m., approximately once every three months.

37.    Plaintiff Perez worked overtime hours at Absolute Thai Restaurant & Patisserie and at Absolute Noodle.

38.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez worked overtime each and every workweek.

39.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez typically worked approximately 26.5 hours of overtime each and every workweek.

40.    Since May 1, 2013, Plaintiff Perez worked approximately 3,581.5 hours of overtime at Absolute Thai Restaurant & Patisserie and at Absolute Noodle.

41.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Defendants never paid Plaintiff Perez overtime wages for any of his overtime hours.

42.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez did not take any weeks off from work.

43.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez was paid a salary.

44.    During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez was paid a semimonthly salary.

45.     During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez was paid on the fifth and 20th of each month.

46.     During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez was always paid in cash.

47.     During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez was paid a semimonthly salary of $925.00.

48.     During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Plaintiff Perez's salary translated into an effective hourly rate of $6.42

49.     During his employment at Absolute Thai Restaurant & Patisserie and at Absolute Noodle, Defendants paid Plaintiff Perez an extra $50.00 for each extra Sunday that he worked.

50.     From May 1, 2013 through the end of Plaintiff Perez's employment, Defendants owe Plaintiff Perez approximately $**23,377.68** in unpaid minimum and overtime wages for his work at Absolute Thai Restaurant and Patisserie and at Absolute Noodle.

### FACTS SPECIFIC TO LIDIA RAMOS

51.     Defendants employed Plaintiff Lidia Ramos ("Ramos") in Defendants' restaurants from approximately July 15, 2015 through approximately November 1, 2015.

52.     Defendants first employed Plaintiff Ramos as dishwasher at Absolute Thai Restaurant & Patisserie and then as a food runner at Absolute Noodle.

53.     Plaintiff Ramos worked at Absolute Thai Restaurant & Patisserie from approximately July 15, 2015 through approximately August 20, 2015.

54.     Plaintiff Ramos worked at Absolute Noodle from approximately September 1, 2015 through approximately November 1, 2015.

**FACTS SPECIFIC TO LIDIA RAMOS' EMPLOYMENT AT ABSOLUTE THAI**

**RESTAURANT & PATISSERIE**

55.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos worked as a dishwasher.

56.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos typically worked six days per week.

57.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos's typical work schedule at was approximately as follows:

| | | | |
|---|---|---|---|
| **Monday** | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| **Tuesday** | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| **Wednesday** | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| **Thursday** | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| **Friday** | 10:30 a.m. – 11:00 p.m. | 1 hour break | 11.5 Hours |
| **Saturday** | 10:30 a.m. – 11:00 p.m. | 1 hour break | 11.5 Hours |
| **Sunday** | Off | Off | Off |
| | | | **67.0 Hours Scheduled (Total)** |

58.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos worked overtime.

59.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos worked overtime each and every workweek.

60.     During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos worked approximately 27.0 hours of overtime each and every workweek.

8

61.    During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos was paid a salary.

62.    During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos was paid a semimonthly salary.

63.    During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos was always paid in cash.

64.    During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos was paid a semimonthly salary of $700.00.

65.    During her employment at Absolute Thai Restaurant & Patisserie, Plaintiff Ramos' salary translated into an effective hourly rate of $4.82.

## FACTS SPECIFIC TO PLAINTIFF RAMOS' EMPLOYMENT AT ABSOLUTE NOODLE

66.    Defendants reassigned Plaintiff Ramos to work at Absolute Noodle on approximately September 1, 2015.

67.    During her employment at Absolute Noodle, Plaintiff Ramos worked as a food runner.

68.    During her employment at Absolute Noodle, Plaintiff Ramos typically worked seven days per week.

69.    During her employment at Absolute Noodle, Plaintiff Ramos's typical work schedule was approximately as follows:

| Monday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| Tuesday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| Wednesday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |
| Thursday | 10:30 a.m. – 10:30 p.m. | 1 hour break | 11 Hours |

| | | | |
|---|---|---|---|
| **Friday** | 10:30 a.m. – 11:00 p.m. | 1 hour break | 11.5 Hours |
| **Saturday** | 10:30 a.m. – 11:00 p.m. | 1 hour break | 11.5 Hours |
| **Sunday** | 5:00 p.m. – 11:00 p.m. | No break | 6 Hours |
| | | | **73.0 Hours Scheduled (Total)** |

70.     During her employment at Absolute Noodle, Plaintiff Ramos worked overtime.

71.     During her employment at Absolute Noodle, Plaintiff Ramos worked overtime each and every workweek.

72.     During her employment at Absolute Noodle, Plaintiff Ramos worked approximately 33 hours of overtime each and every workweek.

73.     During her employment at Absolute Noodle, Plaintiff Ramos was paid a salary.

74.     During her employment at Absolute Noodle, Plaintiff Ramos was paid a semimonthly salary.

75.     During her employment at Absolute Noodle, Plaintiff Ramos was always paid in cash.

76.     During her employment at Absolute Noodle, Plaintiff Ramos was paid a semimonthly salary of $150.00

77.     During her employment at Absolute Noodle, Plaintiff Ramos was also paid cash tips of approximately $30-$40 per day.

78.     During her employment at Absolute Noodle, Plaintiff Ramos' semimonthly salary of $150.00 translated into an effective hourly rate of $.95 per hour.

79.     Defendants did not advise Plaintiff Ramos that they would take a tip credit against her wages as required by 7 DCMR § 903.1 (1994).

80.     Defendants never informed Plaintiff Ramos that they would take a "tip credit" against her wages as required by D.C. Code § 32-1003(g).

81.     Defendants did not advise Plaintiff Ramos that they would take a tip credit against her wages as required by 29 U.S.C. § 203(m)(2).

82.     Defendants never posted in their restaurants a notice of an employee's rights to receive the minimum wage.

83.     Defendants did not pay Plaintiff Ramos the "cash wage" of $2.13, as required by 29 C.F.R. § 531.59, and the cash wage of $2.77, as required by D.C. Code § 32-1003(f).

84.     Defendants are not eligible to take a tip credit against Plaintiff Ramos's wages since they violated the federal and the District of Columbia's requirements for taking a "tip credit."

85.     Defendants paid Plaintiff Ramos twice a month with cash.

86.     Defendants paid Plaintiff Ramos on the fifth and on the 20th of each month.

87.     In total, Defendants owe Plaintiff Ramos approximately **$9,137.60** in minimum and overtime wages for her work at both Absolute Thai Restaurant & Patisserie and at Absolute Noodle.

## FACTS COMMON TO ALL PLAINTIFFS

88.     Throughout Plaintiffs' employment, the federal minimum wage was $7.25 per hour.

89.     The District of Columbia's minimum wage was $8.25 per hour from July 24, 2009 until June 30, 2014; $9.50 per hour from July 1, 2014 through June 30, 2015; and $10.50 per hour from July 1, 2015 through the present.

90.     At all relevant times, federal and District of Columbia law required employers to pay employees one and one-half times the minimum wage for all hours worked over 40 in any one workweek.

91.     Defendants intentionally did not post the notice of District of Columbia wage law required by D.C. Code § 32-1009(a).

92.    Defendants intentionally did not provide Plaintiffs with paystubs or itemized statements, as required by D.C. Code § 32-1008(b).

93.    Defendants owe Plaintiffs approximately **$32,515.28** in minimum and overtime wages for work performed after May 5, 2013.

94.    At all relevant times, Defendants had two or more employees who regularly handled materials that had been moved in or produced for interstate commerce.

95.    At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

96.    At all relevant times, Defendants had the power to fire Plaintiffs.

97.    At all relevant times, Defendants had the power to control Plaintiffs' work schedule.

98.    At all relevant times, Defendants had the power to set Plaintiffs' rate of pay.

99.    At all relevant times, Defendants did not maintain true and accurate records of each hour, day, and week worked by Plaintiffs, or of how much Plaintiffs were paid for their work, as required by 29 C.F.R. § 516 and D.C. Code § 32-1008. Accordingly, the exact amount of hours worked by and wages owed to Plaintiffs will only be known through discovery.

100.   At all relevant times, Defendants were aware of the legal requirement to pay Plaintiffs the District of Columbia and federal minimum wage.

101.   At all relevant times, Defendants were aware of the legal requirement to pay Plaintiffs one and one-half times their regular rate for all hours worked in excess of 40 hours in any one workweek.

102.   At all relevant times, Defendants were aware that they were not paying Plaintiffs the District of Columbia and federal minimum and overtime wage

103.     At all relevant times, Defendants were aware that they were legally required to timely pay Plaintiffs all legally due wages.

## COUNT I
### FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE FLSA

104.     Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

105.     Defendants were "employers" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

106.     The FLSA requires that employers pay non-exempt employees a minimum wage equal to an amount set by Congress. 29 U.S.C. § 206(a)(1).

107.     The FLSA permits states to set a minimum wage higher than that provided for by the FLSA. 29 U.S.C. § 218.

108.     The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. 29 U.S.C. § 207(a)(1).

109.     Defendants violated the FLSA by knowingly failing to pay the required minimum wage to Plaintiffs.

110.     Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times the required minimum wage for hours worked in excess of 40 hours in any one workweek.

111.     Defendants' violations of the FLSA were willful.

112.     For their violations of the FLSA, Defendants are liable to Plaintiffs for unpaid minimum and overtime wages, an equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

13

## COUNT II

## FAILURE TO PAY MINIMUM AND OVERTIME WAGES UNDER THE DCMWA

113.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

114.    Defendants were "employers" within the meaning of the DCMWA, D.C. Code § 32-1002(3).

115.    The DCMWA required that employers pay non-exempt employees at least $8.25 from July 24, 2009 through June 30, 2014; $9.50 per hour from July 1, 2014 through June 30, 2015; and $10.50 per hour from July 1, 2015 through the present. D.C. Code § 32-1003(a).

116.    The DCMWA also requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of 40 hours in any one workweek. D.C. Code § 32-1003(c).

117.    Defendants violated the DCMWA by knowingly failing to pay the required minimum wage to Plaintiffs.

118.    Defendants violated the DCMWA by knowingly failing to pay Plaintiffs one and one-half times the required minimum wage for hours worked in excess of 40 hours in any one workweek.

119.    Defendants' violations of the DCMWA were willful.

120.    For their violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid minimum and overtime wages, an amount equal to three times the unpaid minimum and overtime wages as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## COUNT III

## FAILURE TO PAY WAGES UNDER THE DCWPCL

121.    Plaintiffs incorporate the foregoing paragraphs as if fully restated herein.

14

122.    Defendants were "employers" within the meaning of the DCWPCL, D.C. Code § 32-1301(1).

123.    The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

124.    For purposes of the DCWPCL, "wages" include, among other things, both minimum and overtime wages. D.C Code § 32-1301(3).

125.    Defendants violated the DCWPCL by knowingly failing to pay Plaintiffs all wages earned, including minimum and overtime wages.

126.    Defendants' violations of the DCWPCL were willful.

127.    For their violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, court costs, reasonable attorneys' fees and expenses, interest, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against the Defendants on all counts, and grant the following relief:

a.      Award Plaintiffs **$88,909.75**, consisting of the following overlapping elements:

      i.      unpaid federal minimum and overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

      ii.     unpaid District of Columbia minimum and overtime wages, plus three times the amount of unpaid minimum and overtime wages as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012b(b)(1);

  iii.  unpaid wages earned, plus three times the amount of unpaid wages earned as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

b.  Award Plaintiffs pre-judgment and post-judgment interest as permitted by law.

c.  Award Plaintiffs reasonable attorneys' fees and expenses incurred in the prosecution of this action;

d.  Award Plaintiffs court costs; and

e.  Award any additional relief the Court deems just.


Date: May 10, 2016    Respectfully submitted,

        /s/ Justin Zelikovitz, Esq.
        Justin Zelikovitz, #986001
        LAW OFFICE OF JUSTIN ZELIKOVITZ, PLLC
        519 H Street NW
        Washington, DC 20001
        Phone: (202) 803-6083
        Fax: (202) 683-6102
        justin@dcwagelaw.com

        *Counsel for Plaintiffs*